

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

ROBERT HINTON,

                                                    Plaintiff,

                              -against-

CITY OF NEW YORK, DEPUTY BAILEY, DEPUTY
WILLIAMS, CAPTAIN BUDNARINE BEHARI, SHIELD
NO. 35601, CORRECTION OFFICER VINCENT
SIEDERMAN, SHIELD NO. 18057, CORRECTION
OFFICER AMAYOU, CORRECTION OFFICER PAUL
BUNTON, SHIELD NO. 14371, CORRECTION
OFFICER RAUL MARQUEZ, SHIELD NO. 36234,
CORRECTION OFFICER GERONIMO ALMANZAR,
SHIELD NO. 40633, CORRECTION OFFICER JOHN
DOE 1-2,

                                                    Defendants.

-------------------------------------------------------------------- x

FIRST AMENDED
COMPLAINT AND
JURY DEMAND

Docket No. 13-cv-00651-NRB

ECF CASE


## PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiff seeks relief for the violation of his rights

under the Fourth and Fourteenth Amendments secured by 42 U.S.C. §1983, and the laws and

Constitution of the State of New York.

2.    The claim arises from an April 3, 2012 incident in which Officers of the New York City

Department of Correction ("DOC") assaulted plaintiff while he was handcuffed, resulting in two

bulged discs, head trauma, a transverse process fracture to L3, a fractured nose and retinal

hemorrhaging for which he was hospitalized.

3.    Plaintiff seeks monetary damages (special, compensatory, and punitive) against

defendants, as well as an award of costs and attorneys' fees, and such other and further relief as

the Court deems just and proper.

1

## JURISDICTION AND VENUE

4.     This action is brought pursuant to 28 USC §1331 and 42 USC §§1983 and 1988. Pendent party jurisdiction and supplementary jurisdiction over plaintiffs' state law claims are asserted.

5.     The amount in controversy exceeds $75,000.00 excluding interest and costs.

6.     Venue is laid within the United States District Court for the Southern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Southern District of New York.

## PARTIES

7.     Plaintiff, Mr. Robert Hinton, is a citizen of the United States.  On the date of the incident, he was a pre-trial detainee in the custody of the DOC at Riker's Island, in the jurisdiction of the County of the Bronx, State of New York at George R. Vierno Center (or "GRVC").

8.     The CITY OF NEW YORK (or "the City") is a municipal corporation organized under the laws of the State of New York.  At all times relevant hereto, Defendant City, acting through the New York Department of Correction (or "DOC"), was responsible for the policy, practice, supervision, implementation, and conduct of all DOC matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all DOC personnel. In addition, senior officials in the Department are aware of and tolerate certain practices by subordinate employees in the jails, regardless of whether they are acting according to written policy. These practices, which are wide-spread, long-tolerated and uncorrected are deeply embedded in the DOC culture and therefore constitute unwritten policies or customs. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the DOC,

2

and for ensuring that the DOC personnel obey the laws of the United States and the State of New York.

9.    DEPUTY BAILEY, upon information and belief, was an employee of the DOC on and was acting in the capacity of an agent, servant and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Deputy Bailey worked at GRVC at the time of the incidents alleged in this complaint, and participated or witnessed and failed to intervene in the assault of Mr. Hinton that took place on April 3, 2012 and is sued in his individual capacity.

10.    DEPUTY WILLIAMS, upon information and belief, was an employee of the DOC on and was acting in the capacity of an agent, servant and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Deputy Williams worked at GRVC at the time of the incidents alleged in this complaint, and participated or witnessed and failed to intervene in the assault of Mr. Hinton that took place on April 3, 2012 and is sued in his individual capacity.

11.    CAPTAIN BUDNARINE BEHARI, upon information and belief, was an employee of the DOC on and was acting in the capacity of an agent, servant and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Captain Behari worked at GRVC at the time of the incidents alleged in this complaint, and participated or witnessed and failed to intervene in the assault of Mr. Hinton that took place on April 3, 2012 and is sued in his individual capacity.

12.    CORRECTION OFFICER PAUL BUNTON, SHIELD NO. 14371, upon information and belief, was an employee of the DOC on and was acting in the capacity of an agent, servant and employee of defendant City, within the scope of his employment as such, and acting under

color of state law. On information and belief, Defendant Officer worked at GRVC at the time of the incidents alleged in this complaint, and participated or witnessed and failed to intervene in the assault of Mr. Hinton that took place on April 3, 2012 and is sued in his individual capacity.

13.   CORRECTION OFFICER ALMAZON, upon information and belief, was an employee of the DOC on  and was acting in the capacity of an agent, servant and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Officer worked at GRVC at the time of the incidents alleged in this complaint, and participated or witnessed and failed to intervene in the assault of Mr. Hinton that took place on April 3, 2012 and is sued in his individual capacity.

14.   CORRECTION OFFICER VINCENT SIEDERMAN, SHIELD NO. 18057, upon information and belief, was an employee of the DOC on  and was acting in the capacity of an agent, servant and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Officer worked at GRVC at the time of the incidents alleged in this complaint, and participated or witnessed and failed to intervene in the assault of Mr. Hinton that took place on April 3, 2012 and is sued in his individual capacity.

15.   CORRECTION OFFICER RAUL MARQUEZ, SHIELD NO. 36234, upon information and belief, was an employee of the DOC on  and was acting in the capacity of an agent, servant and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Officer worked at GRVC at the time of the incidents alleged in this complaint, and participated or witnessed and failed to intervene in the assault of Mr. Hinton that took place on April 3, 2012 and is sued in his individual capacity.

16.   CORRECTION OFFICER GERONIMO ALMANZAR, SHIELD NO. 40633, upon

information and belief, was an employee of the DOC on and was acting in the capacity of an agent, servant and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Officer worked at GRVC at the time of the incidents alleged in this complaint, and participated or witnessed and failed to intervene in the assault of Mr. Hinton that took place on April 3, 2012 and is sued in his individual capacity.

17.     Correction Officer John Does 1-2, upon information and belief, was an employee of the DOC on and was acting in the capacity of an agent, servant and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Officer worked at GRVC at the time of the incidents alleged in this complaint, and participated or witnessed and failed to intervene in the assault of Mr. Hinton that took place on April 3, 2012 and is sued in his individual capacity.

18.     At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

19.     Within 90 days of the events giving rise to this claim, plaintiff filed written notice of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of that notice, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

20.     On April 3, 2012, at approximately 4:30 p.m., Mr. Hinton was in DOC custody at GRVC, a facility on Riker's Island.

21.     Defendants told Mr. Hinton he was going to be transferred to another area in the jail.

22.   After defendants handcuffed Mr. Hinton and were moving him to another area, he sat down and refused to move.

23.   Defendants started assaulting Mr. Hinton as they continued to take him to area 13A, saying "you don't get what you want, you get what you deserve, which is an ass-whipping".

24.   Inside of a cell in 13A, defendants continued to beat Mr. Hinton, saying "you're gonna die today".

25.   Men inside of cells in 13A witnessed the incident.

26.   Mr. Hinton was taken to Elmhurst Hospital, where he was diagnosed with two bulged discs, head trauma, a transverse process fracture to L3, a fractured nose and retinal hemorrhaging. He was sent directly to Bellevue Hospital Center for further follow-up.

27.   Mr. Hinton was held at Bellevue until April 5, 2012.

28.   After he returned to Riker's Island, he was hospitalized at the Northern Infirmary Center for several more weeks.

29.   At no time prior to or during the assault did Mr. Hinton make any aggressive gesture toward any officer or supervisor or present any risk of harm to any officer or supervisor.

30.   The defendants failed to intervene to prevent the assault on, or prevent further injury to, Mr. Hinton.

31.   By failing to intervene in order to stop the assault, the defendants demonstrated a deliberate indifference to a substantial risk of serious harm to Mr. Hinton.

32.   At no time did Mr. Hinton assault or attempt to assault any officer, nor did he present any threat or perceived threat to the personal safety of any officer or to the security of the jail so as to warrant the repeated application of blows.

33.   At all times during the events described above, the Corrections Officers were engaged

in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

34.   During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

35.   As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

   a.   Violation of his right to Due Process of Law under the Fourteenth Amendment to the United States Constitution;

   b.   Violation of his right under the Fourth Amendment to be free from unreasonable seizure;

   c.   Violation of his New York State Constitutional right under Article 1, Section 6 to Due Process of Law;

   d.   Violation of his New York State Constitutional right to be free from unreasonable seizure;

   e.   Physical pain and suffering;

   f.   Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, fright, horror, grief, shame, depression, loss of sleep, and increased levels of anxiety.

   g.   Deprivation of his liberty.

## FIRST CAUSE OF ACTION
42 U.S.C. §1983 – Excessive Force and Due Process

(Against Officer Defendants)

36.     The above paragraphs are here incorporated by reference.

37.     By using excessive force against plaintiff without provocation and with no penological purpose, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, defendants deprived plaintiff of his rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by the Fourth Amendment to the United States Constitution.

38.     In addition, the officer defendants conspired amongst themselves to deprive plaintiff of his constitutional rights and took numerous steps in furtherance of such conspiracy, as set forth above.

39.     The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as DOC officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the United States Constitution.

40.     As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

## SECOND CAUSE OF ACTION
New York State Constitution Art. I § 12 – Excessive Force and Due Process
(Against All Defendants)

41.     The above paragraphs are here incorporated by reference.

42.     By using excessive force against plaintiff without provocation and with no penological purpose, and failing to intervene on behalf of one another's unlawful and unconstitutional

conduct, defendants deprived plaintiff of his rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by Article I Section 12 of the New York State Constitution.

43.    In addition, the officer defendants conspired amongst themselves to deprive plaintiff of his constitutional rights and took numerous steps in furtherance of such conspiracy, as set forth above.

44.    Defendants, their officers, agents, servants and employees, were responsible for plaintiff's detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

45.    The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as DOC officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of her constitutional rights secured by the New York State Constitution.

46.    As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

### THIRD CAUSE OF ACTION
Assault and Battery
(Against All Defendants)

47.    The above paragraphs are here incorporated by reference.

48.    Upon approaching and assaulting Mr. Hinton while handcuffed, defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate

harmful and/or offensive touching.

49.     Defendants engaged in and subjected plaintiff to immediate harmful and/or offensive touching without his consent, without provocation and with no penological purpose.

50.     Defendants used excessive and unnecessary force with plaintiff.

51.     Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

52.     As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

### FOURTH CAUSE OF ACTION
### Negligent Hiring & Retention
### (Against City Defendant)

53.     The above paragraphs are here incorporated by reference.

54.     Upon information and belief, defendant City, through the DOC, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

55.     Upon information and belief, defendant City, through the DOC, owed a duty of care, to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to plaintiff's as a result of this conduct.

56.     Upon information and belief, defendant officers were incompetent and unfit for their positions.

57.     Upon information and belief, defendant City knew or should have known through exercise of reasonable diligence that the officer defendants were potentially dangerous.

58.   Upon information and belief, Defendant City's negligence in hiring and retaining the officer defendants proximately caused plaintiff's injuries.

59.   Upon information and belief, because of the defendant City's negligent hiring and retention of defendant officers, plaintiff incurred damages described above.

## FIFTH CAUSE OF ACTION
### (MUNICIPAL LIABILITY)
### (Against City Defendant)

60.   The above paragraphs are here incorporated by reference.

61.   The City of New York is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants.

62.   The aforesaid event was not an isolated incident. The pattern of brutality in the City's jails is deeply entrenched. In five class actions and scores of individual lawsuits in twenty-five years, New York City Department of correction ("DOC" or the "Department") inmates have come before this Court alleging a pattern of brutality in New York City's (the "City's") jails. Five class actions have exposed a Department pervaded by a culture of routine and institutionalized staff violence against inmates, by a failure of accountability at every level, and by supervisors' deliberate and even calculated indifference to, and tolerance and encouragement of, the Constitutional violations that occur on their watch. And each time, the class sought and obtained relief that—if sustained —would have rid the Department of the worst abuses. That relief has included staff training as to when and how to apply physical force against inmates using methods that minimize injury; video monitoring in the jails; unbiased and thorough investigations into serious uses of force by staff; administrative discipline for staff members who violate the Department's use of force policy; staffing practices to ensure that routine violators are assigned to commands with little or no inmate contact; and personnel policies under which the

very worst violators are terminated while conscientious officers are promoted to positions of responsibility.

63.   The City of New York has been aware for some time (from class action and individual lawsuits, notices of claim, inmate complaints, internal investigations, etc.) that many of their officers, including named defendants, are insufficiently trained on how to avoid excessive use of force.  The City of New York insufficiently disciplines officers for not reporting fellow officers' misconduct that they have observed, and it fails to discipline officers for making false statements to disciplinary agencies.

64.   The investigatory body responsible for monitoring officer behavior, the Inspector General's office, also wrongfully allows officers to write their own reports, rather than interviewing officers individually, although inmates are only interviewed individually.  In addition, the Inspector General routinely fails to investigate claims of violence or abuse when the person suffering does not initiate the claim.  The City of New York is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights.  Despite such notice, defendants have failed to take corrective action.  This failure and these policies caused the officers in the present case to violate plaintiff's civil and constitutional rights, without fear of reprisal.

65.   The City of New York knew or should have known that the officers who caused plaintiff's injury had a propensity for the type of conduct that took place in this case. Nevertheless, the City of New York failed to take corrective action. Without proper supervision not only is this abusive behavior ignored, it is condoned.

66.   The City of New York has failed to take the steps to discipline, train, supervise or otherwise correct the improper, illegal conduct of the individual defendants in this and in similar

cases involving misconduct.

67. The City of New York, despite an increase in the amount of lawsuits filed, the amounts paid out in settlement and the amounts spent on litigation costs, fail to review litigation stemming from misconduct by correction officers for patterns, practices and personnel which are likely to cause citizens' constitutional violations. By ignoring these patterns, practices and personnel which are the sources of constitutional violations, the City is liable under municipal liability.

68. The above described policies and customs demonstrated a deliberate indifference on the part of policymakers of the City of New York to the constitutional rights of persons within New York City, and were the cause of the violations of plaintiff's rights here alleged.

69. The City of New York has damaged plaintiff by their failure to properly train, supervise, discipline, review, remove, or correct the illegal and improper acts of their employees, agents or servants in this and in similar cases involving officer misconduct.

70. Plaintiff has been damaged as a result of the wrongful, negligent and illegal acts of the City of New York.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiff punitive damages in an amount to be determined by a jury;

C. Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:      June 19, 2013
              Brooklyn, New York

TO:   Corporation Counsel
       ACC Noreen Stackhouse
       City of New York
       100 Church Street
       New York, NY  10007

Respectfully yours,

By: Cynthia H. Conti-Cook
Bar# CC0778
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue 3rd Floor
Brooklyn, NY  11217
(718) 852-3710
(718) 852-3586
cconti-cook@stollglickman.com